UNITED STATES v. VAN LEUVEN (fourteen cases).

(District Court, N. D. Iowa, E. D. June 4, 1894.)

Nos. 3,496, 3,503, 3,505, 3,506, 3,508–3,510, 3,516, 3,522–3,524, 3,532, 3,535, and 3,537.

These were indictments under Rev. St. § 5440, against George M. Van Leuven, for conspiracy. Defendant demurred to said indictments.

*Cato Sells*, U. S. Dist. Atty., and *M. D. O'Connell*, for the United States.
*John Day Smith*, for defendant.

(District Court, N. D. Iowa, E. D. June 4, 1894.)

Nos. 3,503 and 3,516.

1. OFFICERS OF THE UNITED STATES—PENSION OFFICE—EXAMINING SURGEONS.
    A member of a board of examining surgeons appointed by the commissioner of pensions, though not an "officer of the United States," is yet a "person acting for or in behalf of the United States" in an "official capacity," and under authority of an "office of the government," within the meaning of Rev. St. § 5501, relating to bribery. U. S. v. Germaine, 99 U. S. 508, distinguished.

2. SAME—"DECISION OR ACTION"—WHAT CONSTITUTES.
    The certificate which a board of examining surgeons is required to make out is a "decision or action on" a "question, matter, cause, or proceeding," within the meaning of Rev. St. § 5501, relating to bribery.

3. INDICTMENT FOR CONSPIRACY TO DEFRAUD UNITED STATES—SUFFICIENCY.
    In an indictment under Rev. St. § 5440, for conspiracy to defraud the United States by bribing a member of a board of examining surgeons to make a false report to the commissioner of pensions, it is unnecessary to aver that the commissioner had authority to grant pensions, for such authority is given by general statutes, of which the court will take judicial notice. U. S. v. Reichert, 32 Fed. 142, distinguished.

**4. SAME.**

A conspiracy to procure, by bribery, the making of a false certificate by the board of examining surgeons, whereby the commissioner of pensions may be induced to allow a fraudulent increase of pension, is a conspiracy to defraud the United States, within the meaning of Rev. St. § 5440.

**5. INDICTMENT—JOINDER OF PARTIES—CONSPIRACY.**

There is no impropriety in joining in one indictment, under Rev. St. § 5440, a charge of conspiracy against a private individual, and against a member of a board of examining surgeons appointed by the commissioner of pensions. U. S. v. McDonald, Fed. Cas. No. 15,670, 3 Dill. 543, distinguished.

These were indictments under Rev. St. § 5440, against George M. Van Leuven and George Kessel, for conspiracy to defraud the United States by securing the allowance of a fraudulent pension or increase of pension. Defendants demurred to the indictments.

Cato Sells, U. S. Dist. Atty., and M. D. O'Connell, for the United States.

H. T. Reed, John Day Smith, and Lyon & Lenehan, for defendants.

SHIRAS, District Judge. Section 5440 of the Revised Statutes declares that:

"If two or more persons conspire either to commit any offense against the United States, or to defraud the United States in any manner, or for any purpose, and one or more of such parties do any act to effect the object of the conspiracy, all the parties to such conspiracy shall be liable," etc.

Section 5438 enacts that:

"Every person * * * who enters into any agreement, combination or conspiracy to defraud the government of the United States, or any department or officer thereof, by obtaining or aiding to obtain the payment or allowance of any false or fraudulent claim * * * shall be imprisoned," etc.

Section 5501 declares that:

"Every officer of the United States, and every person acting for or on behalf of the United States, in any official capacity, under or by virtue of the authority of any department or office of the government thereof * * * who asks, accepts or receives any money * * * with intent to have his decision or action on any question, matter, cause, or proceeding which may, at any time, be pending, or which may be brought, before him in his official capacity, or in his place of trust or profit, be influenced thereby, shall be punished," etc.

Section 5451 provides that:

"Every person who promises, offers or gives or causes or procures to be promised, offered or given, any money or other thing of value, * * * to any officer of the United States, or to any person acting for or on behalf of the United States in any official function, under or by authority of any department or office of the government thereof, * * * with intent to influence his decision or action on any question, matter, cause, or proceeding which may at any time be pending or which may by law be brought before him in his official capacity or in his place of trust, or profit, or with intent to influence him to commit or aid in committing, or to collude in, or allow any fraud, or make opportunity for the commission of any fraud, on the United States, or to induce him to do or omit to do any act in violation of his lawful duty, shall be punished," etc.

Section 4746 enacts that:

"Every person who knowingly or willfully in any wise procures the making or presentation of any false or fraudulent affidavit concerning any claim for

pension or payment thereof, or pertaining to any other matter within the jurisdiction of the commissioner of pensions * * * shall be punished," etc.

Under the provisions of this section, it is a criminal offense to knowingly procure the making or presentation of any false or fraudulent affidavit concerning a claim for a pension; and a conspiracy to procure the making or presentation of any false or fraudulent affidavit concerning a pension claim would be a conspiracy to commit an offense against the United States, within the meaning of section 5440. So, also, a conspiracy or combination between two or more persons to violate the provisions of section 5451 or of section 5501 would be a conspiracy to commit an offense. against the United States, within the meaning of section 5440.

In the first count of the indictment in No. 3,503, it is charged that the two defendants "did then and there, corruptly, unlawfully, and feloniously, combine, conspire, and confederate and agree together and with each other to procure to be offered and given by one Titus Heer a sum of money, to wit, ten dollars, to the said George Kessel, who was then and there a person acting on behalf of the United States, in an official function, as a member of a board of surgeons duly organized, appointed, and qualified by the commissioner of pensions of the United States, and acting under the authority of the office of said United States commissioner of pensions, which was then and there an office of the government of the United States, to influence the official decision and action of the said George Kessel in a matter which was pending before said board of surgeons, in his official capacity as a member of said board, and with the intent to influence him, the said George Kessel, to make opportunity for the commission of a fraud on the United States, and to induce him to do an act in violation of his lawful duty as a member of said board, and to thereby defraud the United States;" it being further charged that said Kessel had been duly appointed a member of a board of examining surgeons at Cresco, Howard county, Iowa, by the commissioner of pensions; that it was the duty of said board and of said Kessel, as a member thereof, to examine persons who had claims pending for pensions, and to make a report of the result thereof; that the defendants conspired together to procure one Titus Heer, who had a claim pending for a pension, and who had been ordered by the commissioner of pensions to appear before said board, at Cresco, for examination, to give to said Kessel the sum of $10, with the intent to influence the official action of said Kessel as a member of said board, and thereby secure the allowance of a pension, and of a larger pension than would otherwise have been obtained; and that in pursuance of such conspiracy the said defendant Van Leuven did ask and procure the said Titus Heer to pay said sum of $10, and the defendant Kessel did receive and accept said sum, with the intent to have his official decision and action influenced thereby, and thereby make an opportunity for the commission of a fraud upon the United States.

In support of the demurrer to this indictment, it is claimed, upon the authority of U. S. v. Germaine, 99 U. S. 508, that the defendant Kessel does not come within any of the descriptions of persons

included within the provisions of section 5501. In the case just cited it was held that an examining surgeon appointed by the commissioner of pensions was not an officer of the United States, within the meaning of section 12 of the act of 1825 (4 Stat. 118), which declared that "every officer of the United States who is guilty of extortion under color of his office shall be punished," etc.; it being further held that officers of the United States included persons appointed by the president, by the courts of law, or by the heads of departments, under the authority of an act of congress to that effect; this conclusion being reached upon consideration of the provisions of section 2, art. 2, of the constitution of the United States. It was also held in the same case that the commissioner of pensions is not the "head of a department," within the meaning of the term as used in the section of the constitution just cited. The language of section 5501 of the Revised Statutes is:

"Every officer of the United States and every person acting for or on behalf of the United States, in any official capacity under or by virtue of the authority of any department or office of the government thereof."

Under the ruling in U. S. v. Germaine, supra, an examining surgeon is not an officer of the United States; but, in my judgment, he is a person acting for or on behalf of the United States in an official capacity, under and by virtue of the authority of an office of the government, to wit, the department of pensions.

It is urged in argument that this provision of the statute requires that the person must act in an official capacity, and that this requirement can only be met when the person is an "officer," as that term is defined in U. S. v. Germaine. This construction would wholly destroy the force of the second definition in section 5501. If no person can act in an official capacity, except an officer, and no one can be an officer, except one appointed in the mode provided in section 2, art. 2, of the constitution, then it was useless to place in section 5501 any other definition than that of the opening words, to wit, "Every officer." It is clear, however, that congress intended to include within the section persons other than those who were technically "officers of the United States," as that term is defined by the supreme court. The section includes all persons acting for or on behalf of the United States, under or by virtue of the authority of any department or office of the government, in an official capacity. The commissioner of pensions is appointed by the president, with the approval of the senate. Section 470, Rev. St. He is therefore, technically, an officer of the United States, although not the "head of a department," as that term is used in section 2, art. 2, of the constitution. The branch of the public service placed under his management is an office, and is so repeatedly designated in the statutes of the United States. See sections 4721, 4747, 4748, 4776, Rev. St. By section 4 of the act of July 25, 1882, the commissioner of pensions is authorized to appoint surgeons to examine pensioners and claimants for pensions, or increase thereof; and he is authorized to organize boards of surgeons, to consist of three members, at such points in the states as he may

deem necessary. Thus, we find that the commissioner of pensions is an officer of the government in charge of the office of the government which deals with pension matters; that the commissioner has the authority to appoint examining surgeons, and to organize examining boards of surgeons. Therefore, the persons thus appointed act under or by virtue of the authority lawfully exercised by the pension office through its head, the commissioner, the same being an office of the government. The authority under which they act is derived from the office of pensions, and their action is official, in that they act on behalf of an office of the government; and they act in an official capacity, because they are representatives of the pension office, and their services are in aid of the official duties committed to that office. A person may act in an official capacity because he is an officer lawfully appointed and qualified, and acts as such, or he may act in an official capacity because he lawfully performs duties which are of an official character. I hold, therefore, that members of boards of surgeons appointed by the commissioner of pensions under the provisions of the act of July 25, 1882, come within the provisions of section 5501, and the indictment in question cannot be held bad on the theory that such boards, and the members thereof, are not acting in an "official capacity," as defined in that section.

It is further urged on behalf of the defendants that under the provisions of the act of July 25, 1882, the examining surgeons or boards are not required to render any official decision, and therefore the case is not brought within the section (5501) on which it is based. The language of the section is, "With intent to have his decision or action on any question, matter, cause or proceeding," etc., and the indictment charged that the money was paid and received with intent to have the decision and action of the board, and of said Kessel, as a member thereof, influenced, in such sense that a false report of the condition of the claimant would be made. The act of July 25, 1882, provided that "all examinations shall be thorough and searching, and the certificate contain a full description of the physical condition of the claimant at the time, which shall include all the physical and rational signs, and a statement of all structural changes." It is true, as is urged on behalf of defendants, that the board of surgeons cannot decide the question of the granting or increasing of a pension, nor do they finally decide the rating of the applicant; but they are required to thoroughly examine the claimant, and to give a certificate containing a full description of the physical condition of the claimant, and of all structural changes. This requires of the board a proper consideration of the symptoms or evidences of disease or disability, and the result thereof is a decision of the board upon the question of the claimant's physical condition. The certificate which the board is required to make out, in effect, is both a decision of the board and action by the board, and the members thereof, upon a question or matter submitted to them for their official action and decision, within the meaning of section 5501.

In further support of the demurrer, it is said the indictment does not charge a conspiracy to defraud, and that it is not averred that the commissioner of pensions is authorized to allow pension claims; and in support of this contention the ruling of Mr. Justice Field in U. S. v. Reichert, 32 Fed. 142, is cited. In that case the indictment was for a conspiracy to commit an offense against the United States by making a false claim by means of fraudulent and fictitious field notes of a pretended survey of certain public lands, which claim it was intended should be presented to the United States surveyor general in California for his approval and allowance; but the indictment did not charge that the surveyor general had any authority to allow or approve the claim in case it had been presented, and it was held that this was a fatal defect. It is, however, the settled rule that the law, aside from private statutes and the like, need not be alleged. If the facts alleged are such that, read in connection with the provisions of the statutes applicable thereto, they fully state all the essential elements of the offense, then the indictment is sufficient. It is charged in this indictment that one Titus Heer had made an application for a pension from the United States, and that this claim for a pension was then pending before the commissioner of pensions. The court is bound to take judicial knowledge of the existence of the statutes authorizing the payment of pensions upon proper application and proof being made by the applicant, and also of the statutes creating the office of commissioner of pensions, and defining his duties and powers.

The facts averred in the indictment clearly show that Titus Heer had made an application for a pension from the United States; that this application was pending before the commissioner of pensions; that the commissioner had directed said Heer to appear for examination before the board of surgeons at Cresco, Howard county, Iowa; that the defendants entered into a conspiracy to secure the payment of money by said Heer to the defendant Kessel in order to thereby influence the official decision and action of said Kessel and the board of which he was a member, and to secure a report from said board favorable to the granting of a pension larger than would otherwise be obtainable; that the defendant, Van Leuven, in aid of said conspiracy, did procure the payment of the sum of $10 to said Kessel; and that the latter did receive the same. The matter of the extent of the authority and power of the commissioner of pensions over claims pending in his office is a question arising under the general statutes, which need not be pleaded. In the opinion of Mr. Justice Field in U. S. v. Reichert, supra, the exact ground for the decision is not stated; but I assume it to be that there is not a general statute authorizing the surveyor general of California to allow or approve claims for services in surveying the public lands, and therefore need existed for averring the facts by which the existence of the authority would be established. In respect to the commissioner of pensions, in addition to the section of the statutes which authorizes him to appoint examining surgeons and boards, it is provided in section $4698\frac{1}{2}$ of

the Revised Statutes, that in all cases, "the certificate of an examining surgeon, or of a board of examining surgeons shall be subject to the approval of the commissioner of pensions."

It cannot be doubted that the certificates of the board of examining surgeons are intended to be submitted to the commissioner of pensions for his approval, and the facts and statements therein certified to are intended to guide and influence his action in regard to the applications for pensions pending before him. Certainly, therefore, a conspiracy intended to procure the making and presentation of a false certificate on part of the board of surgeons, whereby the commissioner of pensions may be induced to allow a fraudulent pension, or a fraudulent increase of an existing pension, is a conspiracy to commit a fraud upon the United States.

It is also urged in support of the demurrer that the conspiracy charged against Kessel is merged in the complete offense charged against him, and in support thereof the ruling of Mr. Justice Miller in U. S. v. McDonald, 3 Dill. 543, Fed. Cas. No. 15,670, is relied upon. As I understand that case, it holds—First, that the doctrine of merger does not apply to cases of misdemeanor; and, second, that if an indictment charges that two or more parties conspired to cheat the government, the means employed being set out at length, and then, in addition, charges that the defendants did thus cheat and defraud the government, so that, in effect, a misdemeanor and a felony are both charged against all the defendants, it might, in certain cases, be held that the lower offense was merged in the higher, completed offense. The indictment in this case does not charge that the two defendants did defraud the government by finally securing the allowance of an illegal or excessive pension, and hence the point considered in U. S. v. McDonald does not arise. The completed act charged against Kessel, to wit, the reception of a sum of money to influence his action in the premises, is but one step towards the completion of the fraud upon the United States. It is not charged that the conspiracy was to secure the payment of the money to Kessel, but to commit a fraud upon the United States, by aiding to secure the allowance of a fraudulent claim for a pension, and hence the case does not come within the doctrine of merger. In view of the fact that the only criminal offenses against the United States are those declared by acts of congress, and that there is no statutory definition of "felonies," as distinguished from "misdemeanors," it is a question whether the grade of the punishment must not be resorted to, in determining whether one offense is of a higher grade than another, so that the latter may be deemed to be merged in the former. That is the test for determining whether a crime is or is not infamous, it having been held in Ex parte Wilson, 114 U. S. 417, 5 Sup. Ct. 935, and Mackin v. U. S., 117 U. S. 348, 6 Sup. Ct. 777, that the term "infamous," as used in the constitution and statutes, defines offenses punishable by imprisonment in a state prison or penitentiary. As the offenses described in sections 5440, 5451, and 5501 are all infamous, within these rulings,—being all punishable by imprisonment for a term in excess of one year, and therefore rendering a

defendant liable to imprisonment in a state prison or penitentiary, —they are certainly, in some senses, offenses of the same grade; but it is not necessary, in this case, to pass upon the question suggested.

It is further urged that the ruling of Mr. Justice Miller in U. S. v. McDonald, supra, to the effect that it is improper to join in one indictment, a charge of conspiracy against officers and private citizens, is applicable to this case. In that case the indictment charged a conspiracy on part of the officers of the government under the provisions of section 3169 of the Revised Statutes, and also charged a conspiracy against the private citizens under section 5440; and it was held an improper joinder, mainly by reason of the difference in the punishments provided in the two sections. In the case now under consideration the indictment for conspiracy is based alone upon section 5440, and the ruling relied upon has no application.

In my judgment the indictment in question, and also that in case No. 3,516, are not open to the objections urged against them, and the demurrers thereto are therefore overruled.